IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| ERIC MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-cv-04541 |
| ) | |
| ST. PAUL LUTHERAN CHURCH ) | Judge Steven C. Seeger |
| AND SCHOOL, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint, not the merits of the case <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990); <u>Taylor v. City of Chicago</u>, 2015 WL 739414 (14 C 737) at 3 (N.D.Ill. February 19, 2015). When considering a motion to dismiss under Rule 12(b)(6), a federal court must construe the operative complaint in a light most favorable to the plaintiff and, accept as true, all well pled facts and draw all reasonable inferences in the plaintiff's favor <u>E.g. Fortres Grand Corp. v. Warner Bros. Entertainment, Inc.</u>, 763 F.3d 696, 700 (7th Cir. 2014); <u>AnchorBank FSB v. Hofer</u>, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a motion to dismiss for failure to state a claim, the complaint must provide fair notice of the basis for the claim and must be facially plausible <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant

1

is liable for the misconduct alleged *Id*. at 678. Determining the plausibility of the claim is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A plaintiff need not load his complaint with facts *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Moreover, "specific facts are not necessary; the complaint need only give the defendant fair notice of what the …claim is and the grounds upon which it rests" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (ellipsis in original). The plaintiff must present a story that holds together *Swanson v. Citibank N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

A Rule 12(b)(6) motion to dismiss usually limits this Court's consideration to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and that are referred to in it and information that is properly subject to judicial notice *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). A party opposing a motion to dismiss for failure to state a claim may, however, submit materials outside the pleadings to illustrate facts the party expects to be able to prove and is free to assert new facts in the brief opposing a motion to dismiss *Derfus v. City of Chicago*, 42 F.Supp.3d 888, 900, n.1 (N.D.Ill. 2014).

While the Defendant ST. PAUL LUTHERAN CHURCH AND SCHOOL (hereinafter referred to as "ST. PAUL") acknowledges some of these rules (ST. PAUL Motion, pp. 3-4), it, nevertheless, maintains that the Plaintiff ERIC MOORE's (hereinafter referred to as "MOORE") amended complaint should be dismissed pursuant

2

to Rule 12(b)(6) because MOORE's hostile work environment cause of action does not demonstrate that the conduct in question was sufficiently severe or pervasive to alter his employment conditions (ST. PAUL Motion, p. 4). It first claims that MOORE fails to show that the conduct of Glenn Kuck, the former Caucasian principal of ST. PAUL, displayed any racial hostility toward MOORE and that Mr. Kuck was merely providing MOORE with just information and assistance with ST. PAUL's operations (ST. PAUL Motion, p. 5).

It next maintains that MOORE failed to show how the conduct of Harry Strong, Chairman of the Board for ST. PAUL, was motivated by an animus toward African Americans because Mr. Strong is African American (ST. PAUL Motion, p. 6). Further, it contends that the harassment conducted by certain teachers and board members (ST. PAUL Motion, pp. 7-8) is not actionable because MOORE does not connect these incidents to his race. ST. PAUL then concludes that MOORE merely did not appreciate when individuals disagreed with him and that he wanted to use his position as principal of ST. PAUL to run the school by dictate rather than by collaboration (ST. PAUL Motion, p. 8).

None of ST. PAUL's self-serving contentions can circumvent that MOORE's amended complaint provides more than enough factual information to state a claim for relief that is plausible on the face of this pleading and raises the right to relief above the speculative level. MOORE's amended complaint does satisfy the requisite elements for a cause of action for hostile work environment based on race. The well pled statements in MOORE's amended complaint demonstrate that (i) he was subject to unwelcome

repeated harassment at ST. PAUL, (ii) the harassment was based on his race, (iii) the harassment was severe or pervasive so as to alter the conditions of his employment and created a hostile or abusive working environment and (iv) there is a basis here for employer liability especially since ST. PAUL either condoned, sanctioned or instigated the harassment to which MOORE was subjected.

It, therefore, follows that ST. PAUL's motion to dismiss should be denied and ST. PAUL should be ordered to promptly file its answer to the well pled statements in MOORE's amended complaint so discovery can proceed in this matter.

> **II. MOORE'S AMENDED COMPLAINT DOES SUFFICIENTLY ALLEGE THE REQUISITE ELEMENTS FOR A CAUSE OF ACTION FOR A TITLE VII HOSTILE WORK ENVIRONMENT CLAIM BASED ON RACE.**

It is well settled that to state a Title VII hostile work environment claim based on race, a plaintiff must allege (i) he was subject to unwelcome harassment, (ii) the harassment was based on his race, (iii) the harassment was severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment and (iv) there is a basis for employer liability <u>Robinson v. Perales</u>, 894 F.3d 818, 828 (7th Cir. 2018). Concerning the third element of whether the harassment was severe or pervasive, this element is in the disjunctive; accordingly, the conduct must be either severe or pervasive <u>Vance v. Ball State University</u>, 646 F. 3d 461, 469 (7th Cir. 2011). One instance of conduct that is sufficiently severe may be enough. Conversely, conduct that is not particularly severe, but is an incessant part of the workplace environment may…be pervasive…and corrosive enough that it meets the standard for liability <u>Jackson v. City of Racine</u>, 474 F.3d 493, 499 (7th Cir. 2007).

When addressing this third element, a court must look to all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether it unreasonably interferes with an employee's work performance *Russell v. Board of Trustees of the University of Illinois at Chicago*, 243 F.3d 336, 343.

The workplace does not have to be "hellish" in order for a plaintiff to proceed with a Title VII hostile work environment cause of action. While a "hellish" workplace is surely actionable, a plaintiff's evidence need not show a descent into the inferno *Gates v. Board of Education of the City of Chicago*, 916 F.3d 631, 637 (7th Cir. 2019).

As the Supreme Court held in *Harris v. Forklift Systems, Inc.*:

> "Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological wellbeing, can and often will detract from employees' job performance, discourage employees from remaining on the job or keep them from advancing in their careers….the appalling conduct alleged in *Meritor*, and the reference in that case to environments "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers," merely presents some especially egregious examples of harassment. They do not mark the boundary of what is actionable."

510 U.S. 17, 22 (1993).

Applying these controlling rules here, MOORE's amended complaint states facts that are not only consistent with his claim to relief, but plausibly suggest one *McCauley v. City of Chicago*, 671 F.3d 611, 616-617 (7th Cir. 2011); *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 557 (2007). ST. PAUL does not contest that MOORE was subject to unwelcome harassment or that there was a basis for employer liability here. Rather, it contends that the statements in MOORE's amended complaint do not show that

5

harassment was based on his race or was severe or pervasive so as to alter the conditions of MOORE's employment. ST. PAUL first contends that the statements in the amended complaint about Glenn Kuck fail to show any racial hostility toward MOORE and Mr. Kuck was merely providing MOORE with information and assistance with ST. PAUL's operations (ST. PAUL Motion, p. 5). ST. PAUL's contentions are without merit and ignore the well pled statements in MOORE's amended complaint.

Contrary to ST. PAUL's contention, Mr. Kuck was not merely providing MOORE with information and assistance since MOORE's hire. Rather, the well pled statements in MOORE's amended complaint demonstrate that Mr. Kuck, with the approval of ST. PAUL, was harassing MOORE based on his race by taking over MOORE's job responsibilities or making it extremely difficult for MOORE to successfully carry out his job responsibilities (Amended Complaint, pars. 14-25).

While ST. PAUL maintains that the amended complaint does not show Mr. Kuck's racial animus toward African Americans, that pleading clearly states that Mr. Kuck engaged in this conduct because of MOORE's race (Amended Complaint, pars. 15, 17-19 and 23). Thus, this is not a case of MOORE merely not wanting Mr. Kuck's assistance. Rather, it is a situation where ST. PAUL authorized Mr. Kuck to repeatedly harass MOORE based on his race almost immediately after he was hired. It, therefore, follows, that ST. PAUL's motion to dismiss should be denied.

Similarly, the conduct of Harry Strong, Chairman of the Board, also confirms the viability of MOORE's cause of action against ST. PAUL. Merely because Mr. Strong is African American is irrelevant for purposes of MOORE's cause of action against ST.

PAUL. The fact that the decision maker is in the same protected class as the plaintiff does not immunize an employer from employment discrimination claims *See* <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 79 (1998) (nothing in Title VII necessary bars a claim of discrimination because of sex merely because the plaintiff and the defendant or the person charged with acting on behalf of the defendant are of the same sex; <u>Williams v. Windler</u>, 530 F.3d 584, 587 (7th Cir. 2008) (There can be racial discrimination within the same race.) Thus, merely because Mr. Strong is African American has no bearing on how he inexplicably sanctioned the racial hostile work environment to which MOORE was subjected.

While ST. PAUL maintains that MOORE fails to show how Mr. Strong's directives were motivated by race, the well pled facts in MOORE's amended complaint show that Mr. Strong, instead of ending Mr. Kuck's unwelcome racial harassment, began harassing MOORE himself on the basis of MOORE's race. For example, on August 14, 2019, MOORE entered the building and observed Mr. Strong, along with another board member and the mother of a preschooler, praying out loud that he be removed due to the resignation of Mr. Strong's daughter as a pre-k teacher (Amended Complaint, par. 29).

Moreover, the amended complaint establishes that Mr. Strong continued his racial harassment of MOORE in October, 2019 when he circumvented MOORE's authority by eliminating certain Title I Instructional Consultation pullouts during the day (pars. 34-35). He also ordered MOORE to have a student's mother transfer the student to another school based on MOORE's race (pars. 37-38). Further, he fired Marquita Dixon over MOORE's objection (pars. 40-45).

ST. PAUL fails to consider that MOORE reported to the Board, who was his supervisor for all intents and purposes. As Chairman of the Board, Mr. Strong clearly established the harassing pervasive conduct sufficient to establish a hostile work environment claim based on race *See Passananti v. Cook County*, 689 F.3d 655, 663 (7th Cir. 2012). (A supervisor created a hostile work environment by demeaning, degrading and demoralizing the plaintiff.)

Thus, this is not a case in which MOORE simply disagreed with the Board's directives. Rather, this case involves direct pervasive conduct by Mr. Strong to undermine MOORE's job responsibilities and preclude him from being able to function in his position as principal because of his race. Thus, MOORE's amended complaint does adequately state a cause of action for a hostile racial work environment under Title VII.

ST. PAUL's contentions regarding the incident with Mr. Bersie, the complaints against Marcus Pass and the actions of the Board against him (ST. PAUL's motion, pp. 7-8) also do not warrant the dismissal of MOORE's amended complaint. These incidents all demonstrate the pervasive conduct on the part of the faculty and the Board to strip MOORE of his responsibilities as principal of ST. PAUL and to make the environment so intolerable that it would unreasonably interfere with his work performance and make him leave the school.

Once again, merely because some of these individuals were African American does not preclude MOORE from proceeding with his racial hostile work environment claim against ST. PAUL. ST. PAUL's argument that MOORE fails to explain how these actions from the Board were motivated by racial animus toward him misses the point.

8

The well pled statements in MOORE's amended complaint clearly show that the Board, the Chairman of the Board and various teachers hired by the Board engaged in frequent, discriminatory conduct against MOORE because of his race that was not only humiliating, but also unreasonably interfered with his work performance. Accordingly, MOORE has pled pervasive conduct based on his race that more than sufficiently apprises ST. PAUL as to his Title VII claim. It, therefore, follows that there is no merit to ST. PAUL's motion. Accordingly, it should be denied.

## CONCLUSION

MOORE's amended complaint does state facts that are not only consistent with his claim for a racial hostile work environment, but plausibly suggest that one existed at ST. PAUL while he was principal. Regardless of the race of the individuals engaging in the complained of conduct, the well stated facts in MOORE's amended complaint establishes that MOORE has pled pervasive conduct sufficient to state a hostile work environment claim based on race. ST. PAUL engaged conduct that demeaned, degraded and demoralized MOORE. Moreover, it undertook efforts to make sure that MOORE could not carry out his responsibilities as principal of ST. PAUL.

Thus, MOORE has presented in his amended complaint a story that does hold together. The requisite elements for a Title VII hostile work environment claim based on race are present here, ST. PAUL's motion to dismiss should be denied and it should be ordered to promptly file its answer to MOORE's amended complaint so that discovery may proceed in this case.

        Respectfully submitted,

        /s/Joel F. Handler
        JOEL F. HANDLER (#1115812)
        One E. Wacker Drive, Suite510
        Chicago, Illinois 60601
        (312) 832-0008
        jhandler@handlerlawgroup.com
        Attorney for the Plaintiff,
        ERIC MOORE